**ATLANTA GAS LIGHT COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent,

Cities Service Company and City of McCaysville, Georgia, et al.,
Intervenors.

No. 72–1805.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 5, 1973.

Decided April 12, 1974.

Albert G. Norman, Jr., Atlanta, Ga., of the bar of the Supreme Court of Georgia, pro hac vice, by special leave of court, for petitioner. John E. Holtzinger, Jr., and Frederick Moring, Washington, D. C., were on the brief for petitioner.

William M. Sawyer, Atty., F.P.C., with whom Leo E. Forquer, Gen. Counsel, and George W. McHenry, Jr., Acting Sol., F.P.C., were on the brief, for respondent.

Dale A. Wright, Washington, D. C., was on the brief, for intervenors Cities Service Co. and City of McCaysville, Ga., et al.

Before BAZELON, Chief Judge, and ROBB and WILKEY, Circuit Judges.

BAZELON, Chief Judge:

The Federal Power Commission held petitioner's request for a jurisdictional ruling in abeyance pending resolution of a border dispute. Because we find the Commission has an obligation to resolve the jurisdictional issue, we reverse.

I

In 1818, two mathematicians, James Camack and James S. Gaines, were commissioned by Georgia and Tennessee to survey the 35th parallel north latitude in order to fix the boundary between the states.[1] Had they done their job well this case would not be before us. Due, however, to poor instruments, the Camack-Gaines line ended up roughly one mile south of the 35th parallel. While Georgia did not ratify the survey, Tennessee did. To this day, the Georgia Code defines the boundary between Georgia and Tennessee as the 35th parallel, while the Tennessee Code insists that the boundary is the 35th parallel *as found by Camack and Gaines*, that is, the line one mile south of the parallel.[2] The result is a strip of land which has been claimed by both states for 156 years. Citizens of the area live with numerous anomalies—real estate taxes may be paid to both states, people may go to school in one state while paying taxes in another, and so on.[3]

In 1971 petitioner Atlanta Gas Light Company proposed to sell natural gas in the disputed area. Atlanta, a Georgia company, is exempt from F.P.C. regulation under § 1(c) of the Natural Gas Act, which exempts sales of natural gas received and consumed entirely within one state, provided the sales are regulated by the state's public service commission.[4] Wishing to remain free from

---

1. Record [hereinafter R.] at 105. A history of the dispute is set forth in Hood, J. B. "Georgia's Northern Boundary," Georgia State Bar Journal, November, 1971, reproduced at R. 226–32.

2. *See* Georgia Code § 15–103 ; Tennessee Code § 4–205. The Tennessee Code inexplicably refers to one of the mathematicians as James Carmack, rather than Camack. *See* R. 105.

3. R. 15–17.

4. Section 1(c) of the Natural Gas Act, 15 U.S.C. § 717(c), provides in pertinent part:
    The provisions of this Act shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within

federal regulation, Atlanta petitioned the F.P.C. for a Declaratory Jurisdictional Ruling on whether it would retain its § 1(c) exemption if it extended its facilities into the disputed area. After a hearing, the F.P.C. concluded that the matter would be held in abeyance "until the boundary dispute between the states of Georgia and Tennessee has been resolved by appropriate authority."[5] Atlanta appealed, maintaining that the agency should not postpone action on its Petition.

## II

The F.P.C.'s position is that the border dispute makes it impossible to determine whether the conditions for a § 1(c) exemption are present. The existence of the first condition—that all gas be consumed within Georgia—cannot be determined since the F.P.C. cannot say whether the disputed area is in Georgia. The existence of the second condition—that Georgia regulate all of Atlanta's natural gas sales—cannot be determined since both Georgia and Tennessee claim the right to regulate in the disputed area.[6] Since we cannot resolve boundary disputes, the F.P.C. concludes, we

must wait until this one is settled before acting.

The F.P.C., however, has misperceived its task. While it cannot resolve boundary disputes,[7] it can and should determine the application of the Natural Gas Act in light of such disputes. The issue is jurisdiction, not geography. Administrative agencies often have to apply regulatory schemes to unforseen circumstances.[8] In making such an application here, the F.P.C. would not be resolving the Georgia-Tennessee disagreement—it would simply be determining the implications of that disagreement for purposes of the statute, a common procedure in the law.[9]

The F.P.C. maintains that it is within its discretion to delay action pending the receipt of further evidence, just as it might do, for example, in a rate case. The Supreme Court has held that whether an agency abuses its discretion in not completing a proceeding depends upon a weighing of the agency action against the alternative.[10] Here the agency action—postponement—could lead to lengthy uncertainty. There seems to be no reasonable prospect that this centuries-old dispute will be resolved in the next several years.[11] The alternative—

---

or at the boundary of a State if all the natural gas so received is ultimately consumed within such State, or to any facilities used by such person for such transportation or sale, provided that the rates and service of such person and facilities be subject to regulation by a State commission. . . .

5. Order, Docket No. CP71–221 (May 4, 1972). R. 260–61.

6. *See* Letter from Tennessee Public Service Commission, R. 184–85; Amendatory Order of Georgia Public Service Commission, R. 248–50.

7. *See* Rhode Island v. Massachusetts, 37 U.S. 657, 726–727, 9 L.Ed. 1233 (1838):
　　There can be but two tribunals under the Constitution who can act on the boundaries of states, the legislative or the judicial; the former is limited in express terms to assent or dissent, where agreement is referred to them by the states, and as the latter can be exercised only by this court, when a state is a party, the power is here, or it doesn't exist.

8. *See, e. g.*, Federal Power Commission v. Louisiana Power and Light Company, 406 U.S. 621, 647, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972) (injection of small amounts of interstate gas into intrastate system).

9. *See, e. g.*, Pacific Seafarers, Inc. v. Pacific Far East Line, 131 U.S.App.D.C. 226, 232, 404 F.2d 804, 810 (1968), cert. denied 393 U.S. 1093, 89 S.Ct. 872, 21 L.Ed.2d 784 (1969) and cases cited therein (meaning of "foreign commerce" for purposes of Shipping Act does not determine meaning for purposes of Sherman Act).

10. Wisconsin v. Federal Power Commission, 373 U.S. 294, 311, 83 S.Ct. 1266, 10 L.Ed.2d 357 (1963).

11. Efforts to resolve the dispute by a compact between the states have broke down. R. 71–E. No litigation in the Supreme Court has been instituted as yet. Petitioner's brief at 11. Even if such litigation were to begin immediately, the record indicates it would take two to five years to complete. R. 71–F.

determining jurisdiction in light of the dispute—will provide a quicker resolution and thus facilitate Atlanta's decision on whether to provide gas to the area. Under these unusual circumstances, we find that the agency's refusal to act was unreasonable.

We are obliged, of course, to defer to the F.P.C. for the initial determination of its jurisdiction. "While the agency's decision is not the last word, it must assuredly be the first." [12] We note only that to the extent the issue concerns state regulation in the disputed area, we assume the F.P.C. will make its good offices available for a meeting of representatives of the states, in the hope that at least as to the regulation of natural gas Georgia and Tennessee can reach agreement. It seems likely that in this narrow area the states will be willing to resolve this 19th century dispute before the 21st century begins.

The decision of the F.P.C. is reversed and the matter remanded for proceedings not inconsistent with this opinion.

So ordered.

WILKEY, Circuit Judge, concurring:

I agree with my colleagues this matter should be remanded, but I think more detail as to the nature of the problem will perhaps assist to a solution and make clear why such has not been heretofore achieved.

What the petitioner Atlanta Gas Light Company desires, and believes itself entitled to, is regulation of this proposed pipeline by the State of Georgia, not the Federal Power Commission. As the situation was explained to this court, petitioner company could build the pipeline tomorrow, if it would accept FPC regulation. But FPC instead of Georgia regulation would have some unfortunate side effects on the company (not material here), which the company is understandably loath to accept. The FPC has no objection to regulation by Georgia, but FPC responsibilities under its applicable statute [1] require it either to exercise its responsibilities or to relinquish such responsibilities by granting an exemption only if (1) regulation by a state public utility commission is *certain*, and (2) regulation is by only *one* State.[2]

Neither essential prerequisite to an exemption is present in the current situation. Both Georgia and Tennessee assert sovereignty over this one-mile strip. It is not absolutely certain that either State will exercise effective regulation over the pipeline in regard to safety standards, etc. It is quite possible that *both* will exercise some regulatory control, thus making the pipeline a peculiar type of "interstate" line requiring FPC jurisdiction.

A workable solution thus requires the agreement of both Georgia and Tennessee with the FPC, to create a situation which will allow the FPC lawfully to relinquish its jurisdiction and grant the sought exemption. Hence the remand, not only to allow the FPC to determine its jurisdiction, but first to create the conditions in which to act.

---

12. Federal Power Commission v. Louisiana Power and Light Company, *supra*, 406 U.S. at 647, 92 S.Ct. at 1842 (1972).

1. Section 1(a) of the Natural Gas Act, 15 U.S.C. § 717(a); 15 U.S.C. §§ 717–717w.

2. Section 1(c) of the Natural Gas Act, 15 U.S.C. § 717(c).